UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

MICHAEL THOMAS,

Plaintiff,

v.

CLARK COUNTY SCHOOL DISTRICT POLICE DEPARTMENT et al.,

Defendants.

Case No. 2:13-cv-01743-RFB-VCF

**ORDER**

## I. INTRODUCTION

Before the Court are Defendants' Motion to Strike the Amended Complaint (ECF No. 83), Defendants' Motions to Dismiss (ECF Nos. 83, 84, 107, and 110), Defendants' Motion to Extend Time re Discovery Deadlines (ECF No. 116), and Defendants' Motions for Summary Judgment (ECF Nos. 122, 123).

## II. BACKGROUND

This case was removed on September 23, 2013. ECF No. 1. At the hearing on March 24, 2016, the Court granted the Motion to file a Third Amended Complaint, unreferred discovery, and ordered that discovery should be completed within 60 days after the filing of the responsive pleading to the Third Amended Complaint. ECF No. 77. On April 21, 2016, Defendants CCSD and Ketsaa filed two Motions to Dismiss (ECF Nos. 83,84). ECF No. 83 Motion to Dismiss seeks dismissal of claims (3) and (4) for ADA retaliation and wrongful termination. ECF No. 84 Motion to Dismiss seeks dismissal of all claims against Defendant Ketsaa because of qualified immunity.

On May 25, 2016, Defendants Christopher Klemp, and Pat Skorkowsky filed a Motion to Dismiss the TAC. ECF No. 107. They also joined ECF Nos. 83, 84 Motions to Dismiss. ECF No. 109. On August 8, 2016, Defendants filed joint Motions for Summary Judgment. ECF Nos. 122, 123.

The Court held a hearing on pending motions on February 9, 2017. At the hearing counsel for Plaintiff Thomas stipulated to the dismissal of all claims against Defendant Filberto Arroyo, as well as to the tortious discharge claim pled against all defendants. Thus the following claims remain to be considered:

--Count I: First Amendment retaliation against all defendants.

--Count II: State civil conspiracy against all defendants.

--Count IV: ADA and NRS 613.330 retaliation against all defendants.

--Count V: Negligent hiring, retention, training and supervision against defendants James Ketsaa and Clark County School District Police Department.

## II.     FAILURE TO CITE AND AUTHENTICATE

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." Orr v. Bank of America, NT & SA, 285 F.3d 764, 773 (9th Cir. 2002). "We have repeatedly held that unauthenticated documents cannot be considered in a motion for summary judgment." Id. "The court need consider only the cited materials, but it may consider other materials in the record." FRCP 56(c)(3)

Defendants argue that the Responses to the Motions for Summary Judgment should be stricken for failure to include citations, for failure to authenticate attached exhibits, and for failure to otherwise comply with local rules. Plaintiffs did not authenticate any of the attached exhibits at the time of filing, but purported to do so with a single declaration by the plaintiff, filed after the Motions for Summary Judgment had been fully briefed. The Court will not consider the late-filed declaration, which in any case could not authenticate those documents of which the Plaintiff has no personal knowledge. The Court will not consider uncited narrative testimony in the Response Motions. However, the Court will consider the notices of investigations, which Defendants confirmed had been produced in discovery, as well as the evidence cited to in the Defendants'

- 2 -

Motions. Defendants represented on the record that they would not object to the consideration of these notices, subject to reservation of the right to contest their veracity.

### III. LEGAL STANDARD

#### A. Motion for Summary Judgment

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted).

### IV. UNDISPUTED/DISPUTED FACTS

#### A. Undisputed Facts

The Court finds the following to be undisputed based upon the record, including the failure of Plaintiff to submit admissible evidence rebutting most of the factual assertions of the Defendants. Plaintiff was hired by the Clark County School District Police Department in August 2003 as a police officer. A few years later he applied for a promotion to sergeant. When he was not selected for promotion, Plaintiff initiated an arbitration challenging his lack of promotion. The arbitrator upheld CCSD's promotion decision. The arbitrator found that the Chief of Police at the time had made a sound discretionary decision not to promote Plaintiff. The arbitrator found the decision to be appropriate based on the prior Chief's testimony that Chief had considered Plaintiff's prior termination from a law enforcement position and a psychological report of Plaintiff

- 3 -

that raised questions about his fitness to be promoted.

In addition to challenging the promotional process via arbitration, on February 16, 2006 Plaintiff filed a complaint with Nevada Equal Rights Commission ("NERC") and the Equal Employment Opportunity Commission ("EEOC") regarding his lack of promotion to sergeant in 2005. He alleged that he was discriminated against because of his age (45) in violation of the Age Discrimination in Employment Act ("ADEA"). Plaintiff withdrew the complaint on March 9, 2006.

In September, 2008, Plaintiff agreed to accept a 120-hour suspension without pay for his unprofessional conduct in making false statements to his supervisors regarding attendance of jury duty.

In mid-2010 Plaintiff wrote and dropped off the anonymous letters to media outlets. In these letters Plaintiff spoke out about a private weekend party held at the home of a department dispatcher, Rebecca Wamsley, where a minor had consumed alcohol and later caused a fatal vehicular crash. It was not until December 2012 that it was publicly known that Plaintiff had been the author of the letters.

On January 13, 2011, Chief Ketsaa authored an inter-office memorandum to Plaintiff indicating that a complaint filed against him for "divulging department/official business" had been fully investigated, and "marked as unfounded." On March 4, 2011, Ketsaa authored an inter-office memorandum to Plaintiff indicating that a complaint had been filed against him for "participation in the Commission of a Felony (Extortion)," insubordination, failure to maintain performance standards, insubordination, and dishonesty, among other charges. Four days later, on March 9, 2011, Ketsaa authored another memorandum indicating that allegations had been made against Plaintiff for insubordination, conduct unbecoming of a member of the department, and failure to maintain performance standards. On May 17, 2011, Ketsaa authored a memorandum indicating that an allegation had been made against Plaintiff, and that based upon a preliminary investigation, Plaintiff may have committed violations for insubordination and conduct unbecoming a member of the department.

On April 4, 2013, an internal complaint was filed alleging that Plaintiff harassed a co-

- 4 -

worker, Carrie Williams. On April 25, 2013, Thomas is notified of another Internal Affairs case against him. He was charged with harassment. Carrie Williams claimed that Thomas had constantly called her, harassed her, and intimidated her by phone in order to coerce her to speak about her daughter's drinking at the Wamsley Party. Plaintiff received notice in June 2013 that Williams' complaint against him was determined as "not sustained." On November 19, 2014, Plaintiff filed a crime report, alleging that Williams had falsely reported being victimized by Plaintiff. Plaintiff cited the wrong date for Williams report against him, May 22, 2014, instead of April 2013. Plaintiff admitted that the crime he accused Williams of had a statute of limitations of one year. After Plaintiff emailed the officer charged with reviewing his crime report asking about the report's status, Plaintiff was informed that the crime report was incorrectly filed and therefore did not get assigned for a follow-up investigation. Once this discrepancy was noted, Plaintiff was informed that Mr. Maciszak would review the crime report and would advise Plaintiff after his review. However, Plaintiff did not wait for the review to be completed, and instead, in January 2015, swore out an affidavit of arrest against Ms. Williams. On May 6, 2016, Plaintiff received a notice of possible disciplinary action from Detective Klemp, alleging that he abused his authority by filing a false crime report and a false affidavit for an arrest warrant against Williams for personal reasons.

Plaintiff was suspended without pay on May 6, 2015. The letter informing him of the suspension alleges the following: "concerns that you have been dishonest and misused / abused your authority as a police officer by filing a false crime report, and a false affidavit for an arrest warrant, against a CCSDPD employee for personal and unlawful reasons." Plaintiff was terminated around December 3, 2015. The letter informing Thomas of his dismissal recited the above-described actions, and asserted the following justifications: **"**Incompetence, inadequate work performance, discourteous treatment of the public or a fellow employee, dishonesty, conflict of interest, and failure to follow the rules and regulations."

### V.    MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF's ADA AND NRS 613.330 CLAIMS [ECF No. 122]

#### A.  ADA and Nevada Discrimination Claims

Plaintiff has put forth no admissible evidence to support his charge of discrimination under the ADA and Nevada law regarding any alleged disability. He has not presented any evidence of a request for an accommodation that was not accepted. He has not presented information of a disability that served as a basis for any adverse action or connected a disability to adverse action. Plaintiff has not attached or separately filed any exhibits to support his opposition, nor credibly contested the veracity of any of authorities relied upon by the Defendants. The Plaintiff in his submissions has also disavowed claims based upon lack of accommodation or discrimination regarding a disability. The Court therefore dismisses any claim based upon discrimination under federal or state law because Plaintiff has presented no competent evidence supporting such claims.

#### B.  Retaliation for filing a Complaint with the EEOC or NERC

The Court also will dismiss Plaintiff's claim under the ADA for retaliation for filing a complaint regarding discrimination.

"We apply the Title VII burden-shifting framework, as established in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), to retaliation claims under the ADA. Under the Title VII retaliation standard, a plaintiff must make out a prima facie case "(a) that he or she was engaged in protected activity, (b) that he or she suffered an adverse action, and (c) that there was a causal link between the two." <u>T.B. ex rel. Brenneise v. San Diego Unified School Dist.</u>, 806 F.3d 451, 472-473 (9th Cir. 2015) (internal citations and quotation marks omitted). The Ninth Circuit applies the but-for causation test for causation to ADA retaliation claims. <u>Id.</u>

Defendants argue that the timing precludes liability for ADA retaliation. Plaintiff reasserts facts in his complaint without accompanying evidence. The undisputed facts show that Plaintiff was suspended on May 6, 2015. The EEOC charge was filed on October 5, 2015, five months later, and Plaintiff was terminated approximately two months later, in early December 2015. The letter informing Plaintiff of the suspension asserts dishonesty and the filing of a false crime report, as does the letter informing him of the termination. The sequence of events as well as the serious

- 6 -

nature of the abuse of authority by Plaintiff apparently confirmed by Defendants do not support Plaintiff's claim of retaliation.  The Plaintiff can point to no other evidence that supports a finding that the termination was motivated by retaliation. Plaintiff has presented no facts to establish but-for cause. Plaintiff's Response does not include authenticated evidence the court may consider on this matter. As such, no reasonable jury could find that the EEOC charge was a but-for cause of plaintiff's termination, and summary judgment must be granted for CCSD.

Because the Court grants summary judgment for Defendants as to the ADA claim, the Court denies the Motions to Dismiss on this claim as moot.

### VI.   MOTION FOR SUMMARY JUDGMENT ON REMAINING CLAIMS [ECF No. 123]

The Court grants summary judgment as to Count III ADA retaliation. Plaintiff voluntarily dismissed the Count III claim for tortious discharge. Claims remain for First Amendment retaliation, state civil conspiracy, and negligence.

#### A.  First Amendment Retaliation

All Defendants seek summary judgment in their favor on Count I First Amendment retaliation.

##### 1.  Legal Standard

"The First Amendment shields public employees from employment retaliation for their protected speech activities.

"First, we consider whether the plaintiff has engaged in protected speech activities, which requires the plaintiff to show that the plaintiff: (1) spoke on a matter of public concern; and (2) spoke as a private citizen and not within the scope of her official duties as a public employee. If the plaintiff makes these two showings, we ask whether the plaintiff has further shown that she (3) suffered an adverse employment action, for which the plaintiff's protected speech was a substantial or motivating factor. If the plaintiff meets her burden on these first three steps, thereby stating a prima facie claim of First Amendment retaliation, then the burden shifts to the government to escape liability by establishing either that: (4) the state's legitimate administrative interests

outweigh the employee's First Amendment rights; or (5) the state would have taken the adverse employment action even absent the protected speech." Karl v. City of Mountlake Terrace, 678 F.3d 1062, 1068 (9th Cir. 2012) (internal citations and quotations marks omitted)." Id.

"The precise nature of the retaliation is not critical to the inquiry in First Amendment retaliation cases. The goal is to prevent, or redress, actions by a government employer that chill the exercise of protected First Amendment rights." Coszalter v. City of Salem, 320 F.3d 968, 974-75 (9th Cir. 2003) (internal quotation marks omitted). "Although the type of sanction . . . need not be particularly great in order to find that rights have been violated, the plaintiff must nonetheless demonstrate the loss of a valuable governmental benefit or privilege. Mere threats and harsh words are insufficient." Nunez v. City of Los Angeles, 147 F.3d 867, 874-75 (9th Cir. 1998) (internal quotation marks omitted).

"Whether an employee's speech addresses a matter of public concern is a pure question of law that must be determined by the content, form, and context of a given statement, as revealed by the whole record. Of these three factors, the content of the speech is generally the most important. Speech that deals with individual personnel disputes and grievances and that would be of no relevance to the public's evaluation of the performance of governmental agencies is generally not of public concern. By contrast, speech involves a matter of public concern when it can fairly be considered to relate to any matter of political, social, or other concern to the community." Id at 1069 (internal citation and quotation marks omitted).

Speaking out in an oppositional manner to one's own public employer may be actionable where the speech "implicates significant government misconduct." Id. (citing Alpha Energy Savers, 381 F.3d 917, 927 (9th Cir. 2004). "Whether [a public employer] treats complaints of misconduct seriously or fails to follow-up is also a matter of relevance to the public's evaluation of the performance of governmental agencies and consequently independently a matter of public concern." Robinson v. York, 566 F.3d 817, 822-23 (9th Cir. 2009).

The Ninth Circuit has found that in the absence of direct evidence, circumstantial evidence of the following may be sufficient to overcome summary judgment as to motivation: (1) Proximity creating a plausible inference of causation; (2) employer expressed opposition to speech to the

Plaintiff or others; and (3) employer's preferred explanations for the adverse action were false and pretextual. Keyser v. Sacramento City Unified School Dist., 265 F.3d 741, 751-52 (9th Cir. 2001) (reviewing cases). Where two years separate the date the employer learns of the speech, and the adverse action, and where there is not additional evidence of motivation, proximity is insufficient to overcome summary judgment. Id. at 752.

### 2. Discussion

#### a. Matter of Public Concern by Private Citizen

Defendants argue, without citations to the record, that Plaintiff first spoke out about the party to internal affairs and the chief of police in his role as a police officer. Defendants argue that Plaintiff's complaint admits that he spoke out because he felt his duties as a police officer required him to. Defendants cite to Plaintiff's deposition testimony in which he states "I reported it as a member of the department. As a police officer, yes." Defendants argue that Plaintiff's speech regarding discontent with internal affairs investigation and promotions is personal and not an issue of public concern. However, Defendants have also cited to deposition testimony in which Plaintiff makes clear that he sent the letters while off-duty, and went to great lengths to conceal his identity as an officer.

The Court finds as a matter of law that the Plaintiff communicated information on a matter of public concern based upon the undisputed facts. Whether public school police officials were engaged with minors in the context of underage drinking and whether there was an attempt to conceal this information is a matter of public concern. The undisputed content of the letters, allegations regarding the party and cover-up, implicate "significant government misconduct," and failure to follow-up on allegations of misconduct and cover-up of misconduct, and therefore constitute speech on matters of public concern. See Karl, 678 F.3d at 1069.

The Court further finds that the undisputed and disputed facts establish that Plaintiff was speaking as a private citizen when he made the statements. He was off-duty when he made the statements. He was not speaking in any official capacity. He also sought to conceal his identity as an officer. While his sense of duty may have led him to feel impelled to make the comments this does not mean that he made such statements in any official or quasi-official capacity.

- 9 -

### b. Adverse Action and Statute of Limitations

"We have previously considered possible analogies between federal civil rights actions under 42 U.S.C. § 1983 (which lacks an express statute of limitations) and various state-law claims, and have held that § 1983 actions are governed by state general or residual personal injury statutes of limitations." Reed v. United Transp. Union, 488 U.S. 319, 326 (1989). "Federal law determines when a civil rights claim accrues. Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." Maldonado v. Harris, 370 F.3d 945, 955 (9th Cir. 2004) (internal citations and quotation marks omitted). Nevada has a two-year statute of limitations for "actions to recover damages for injuries to a person[.]" NRS 11.190(4)(e). Therefore, the applicable statute of limitations for Plaintiff's First Amendment Retaliation claim is two years after he knew or had reason to know of the adverse action and the unlawful motivation.

Plaintiff filed the first complaint in this action on July 1, 2013. As such, any alleged adverse action of which plaintiff was aware before July 1, 2011, could not be the basis for his First Amendment retaliation claim.

The Court finds that the internal affairs investigations, including notices of said investigations sent to Plaintiff, may in and of themselves constitute adverse actions cognizable in a First Amendment retaliation action. These are not "mere threats or harsh words" but rather official notices of alleged misconduct and investigation that would place an ordinary person in fear of surveillance and discipline. Taken together, repeated investigations over the course of more than a year constitute action that would "chill the exercise of protected First Amendment Rights." See Coszalter v. City of Salem, 320 F.3d 968, 974-75 (9th Cir. 2003).

The Court finds, however, that the only investigation(s) or complaint that could be a basis for the Retaliation Claim are the April 2013 internal complaint, the investigation leading up to the suspension and the investigation leading up to the termination. While several investigations were initiated before July 2011, these investigations or notices of charges are outside of the statute of limitations period. Moreover, they are also outside of the period when Defendants would have even known that Plaintiff had been involved in making statements of public concern, since this

- 10 -

was not known by Defendants until December 2012.  Plaintiff's claims thus may only proceed with this aforementioned investigation and complaint as a basis for retaliation.  The Court now turns to an analysis of the merits of claims based upon these actions.

### c. Substantial Motivating Factor and Causation

As laid out above, the Court considers only the evidence presented in the Defendants' Motion as well as the notices and communications—produced by defendant—related to the investigations. Therefore, the relevant record contains no direct evidence that the Plaintiff's protected speech was a substantial motivating factor in bringing the investigations, harassment, suspension, termination, or any other adverse action. Nor does the record contain circumstantial evidence in the form of opposition expressed by the employer to the protected speech, or facts tending to show that the preferred explanation for the adverse actions were false or pretextual. As such, Plaintiffs only path to proving motivation is by the timing of employer actions, including a series of investigations leading up to the suspension and termination.

The Court does not find that the undisputed or disputed facts regarding the timeline of events create a genuine issue of material fact that the investigations or complaint against Plaintiff were motivated by retaliation for his protected statements.  The first alleged retaliatory action, the April 2013 internal complaint, comes four months after he is unmasked as the anonymous letter writer.  The complaint was issued directly after it is communicated to CCSD officials by Williams that Thomas had allegedly harassed her.  Even then, the complaint is found to be "not sustained" in June 2013.  Plaintiff is not actually suspended until May 6, 2015 – more than two and half years after he was known to have been the author of the anonymous communications.  The Court does not find that such timing creates a genuine disputed fact as to motivation and finds that summary judgment should be granted on this claim on this basis for all of the Defendants.  <u>Keyser v. Sacramento City Unified Sch. Dist.</u>, 265 F.3d 741, 752 (9th Cir. 2001).

### d. Adverse Action Would Have Occurred Anyway

The Court further finds that undisputed and disputed facts demonstrate that Plaintiff would have been suspended and terminated even if he had not made the protected statements.  Defendants in this case learned that Plaintiff had sworn out an affidavit for arrest of Williams that contained

significant and material false statements to support her arrest. The inaccuracy of Plaintiff's statement as to the date when Williams actually committed the act of making a false report—claiming that she made the statement a year later in order for it to fall into the statute of limitations for the crime he swore she committed—represented a serious abuse of his authority. This was in addition to his failure to follow the proper procedure before swearing out the affidavit for Williams' arrest. The Plaintiff has not presented any admissible or persuasive evidence that such an abuse of authority would not have led to his suspension and termination. He has not presented credible evidence that his conduct was based upon innocent or good-faith mistakes and he has presented no evidence that CCSD officials believed this either. Plaintiff, thus, has not established that there is a genuine issue of material fact that he would not have been terminated absent the protected statements.

### B. Negligent Hiring, Training, and Supervision,

This claim is asserted against Defendants Ketsaa and CCSD only. Defendants argue that that it is barred by discretionary act immunity. A governmental act or decision is entitled to discretionary-act immunity if it (1) "involve[s] an element of individual judgment or choice and (2) [is] based on considerations of social, economic, or political policy." Martinez, 168 P.3d 720, 729 (Nev. 2007). There are two limitations on discretionary-act immunity. First, immunity does not attach for actions taken in bad faith. Falline v. GNLV Corp., 823 P.3d 888, 891 (Nev. 1991). Second, acts taken in violation of the Constitution cannot be considered discretionary. Mirmehdi v. United States, 689 F.3d 975, 984 (9th Cir. 2011); Nurse v. United States, 26 F.3d 996, 1002 (9th Cir. 2000).

In determining whether a discretionary act is entitled to immunity, Nevada courts look to case law interpreting the Federal Tort Claims Act (FTCA), which Nevada's discretionary-act immunity statute is based upon. See Martinez v. Maruszczak, 168 P.3d 720, 727-28 (Nev. 2007). The Ninth Circuit has found generally that decisions regarding hiring, training and supervision fall within the ambit of discretionary immunity. Vickers v. United States, 228 F.3d 944, 950 (9th Cir. 2000) (explaining that "[t]his court and others have held that decisions relating to the hiring, training, and supervision of employees usually involve policy judgments of the type Congress

- 12 -

intended the discretionary function exception to shield.")

Plaintiff has produced no evidence to show bad faith in hiring, training, or supervision. Plaintiff has produced no such evidence whether disputed or not.  The Court has not found a constitutional violation by the Defendants.  The activities and decisions referenced by Plaintiff are covered by discretionary act immunity.  Vickers, 228 F.3d at 950-51.  This claim is dismissed.

### C.  State Civil Conspiracy

"An actionable conspiracy consists of a combination of two or more persons who, by some concerted action, intend to accomplish an unlawful objective for the purpose of harming another, and damage results from the act or acts." Hilton Hotels Corp. v. Butch Lewis Productions, Inc., 862 P.2d 1207, 1210 (Nev. 1993). "The gist of a civil conspiracy is not the unlawful agreement but the damage resulting from that agreement or its execution. The cause of action is not created by the conspiracy but by the wrongful acts done by the defendants to the injury of the plaintiff." Eikelberger v. Tolotti, 96 Nev. 525, 528 n.1 (Nev. 1980). "Agents and employees of a corporation cannot conspire with their corporate principal or employer where they act in their official capacities on behalf of the corporation and not as individuals for their individual advantage." Collins v. Union Federal Sav. & Loan Ass'n, 662 P.2d 610, 622 (Nev. 1983).

As the Court has not found that the Defendants have engaged in any unlawful activity, Plaintiff's civil conspiracy claim is dismissed.

### VII.   CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that ECF No. 122 Motion for Summary Judgment is GRANTED.

**IT IS FURTHER ORDERED** that ECF No. 123 Motion for Summary Judgment is GRANTED.

**IT IS FURTHER ORDERED** that ECF No. 82 Motion to Strike, and ECF Nos. 83, 84, 107, and 110 Motions to Dismiss are DENIED as moot.

1
2    **IT IS FURTHER ORDERED** that the Clerk of Court is ordered to close this case.
3
4    **DATED**: March 24, 2017.
5
                                            _____
6                                            RICHARD F. BOULWARE, II
                                            UNITED STATES DISTRICT JUDGE
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28